E-FILED
Friday, 26 March, 2010  08:26:05 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DUNNET BAY CONSTRUCTION COMPANY, an Illinois corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 10-3051 ) |
| GARY HANNIG, in his official capacity as Secretary of Transportation for the Illinois Department of Transportation, | ) ) ) ) ) ) |
| Defendant. | ) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter has come before the Court on Plaintiff Dunnet Bay Corporation's (Dunnet Bay) Amended Motion for Temporary Restraining Order (d/e 8). Dunnet Bay asks the Court to issue a temporary restraining order (TRO) to restrain Defendant Gary Hannig (Secretary), in his official capacity as Secretary of Transportation for the Illinois Department of Transportation (Department), from entering into a contract for repair work on the Eisenhower Expressway in Cook and DuPage Counties, Illinois. Dunnet Bay contends that the bid letting process violated its right to equal

1

protection under the Fourteenth Amendment to the United States Constitution. As set forth below, Dunnet Bay fails to demonstrate a right to a TRO. The Motion is, therefore, denied.

STATEMENT OF FACTS

On December 4, 2009, the Department issued an invitation for bids on Contract No. 60157 for repair work on the Eisenhower Expressway (Project). <u>Amended Verified Complaint for Declaratory and Injunctive Relief (d/e 7) (Verified Complaint)</u>, ¶ 30. The announcement stated that the bids would be let on January 15, 2010. The Project was federally funded. The Department estimated the cost of the Project to be $9,092,000.00. <u>Motion to Substitute Affidavit (d/e 12)</u>, attached <u>Affidavit of Christine Reed (Reed Affidavit)</u>, ¶ 11. The Department also published the "IDOT For Bid List of Bidders" (List of Bidders) which listed the general contractors that would be expected to bid on the Project. The Department erroneously omitted Dunnet Bay from the List of Bidders. <u>Verified Complaint</u>, ¶ 38.

Pursuant to federal regulations, the bid specifications set a goal (DBE Goal) of the percentage of work going to contractors and subcontractors that fit the federal criteria for Disadvantaged Business Enterprises (DBE).

2

DBEs are businesses controlled by socially and economically disadvantaged individuals.  See 49 C.F.R. §§ 26.5, 26.67; Northern Contracting, Inc. v. Illinois, 473 F.3d 715, 715 (7th Cir. 2007).  Dunnet Bay did not fit the definition of a DBE.  Dunnet Bay, thus, had to secure DBE subcontractors to meet the DBE Goal.

Dunnet Bay alleges that the DBE Goal for the Project was 8 percent originally, but was changed to 22 percent.  Verified Complaint, ¶¶ 31-33.  Dunnet Bay alleges that the increase to 22 percent was arbitrary and capricious and was not done in compliance with federal regulations.  Id., ¶¶ 34-35.  Christine Reed, the Director and Chief Engineer of the Department's Division of Highways, states that the Department followed its standard procedures for setting the 22 percent DBE Goal.  Reed Affidavit, ¶ 7.  Reed states that the procedures were approved by the United States Court of Appeals for the Seventh Circuit.  Id. (citing Northern Contracting, Inc.).

Dunnet Bay submitted the low bid on the Project in the amount of $10,548,873.98.  Dunnet Bay alleges that it made a good faith effort to meet the 22 percent DBE Goal, but could only secure 8 percent DBE participation in the bid.  Verified Complaint, ¶ 38.  The Department

rejected Dunnet Bay's bid as non-responsive because of the failure to meet the DBE Goal.

Dunnet Bay asked for reconsideration because it alleges that it had made a good faith effort. The applicable regulations stated that the Department would issue a waiver of the DBE Goal requirement if the bidding contractor made a good faith effort to meet the DBE Goal set for the particular project. Id., ¶¶ 12, 18. Dunnet Bay presents evidence that the Department instituted an unwritten policy not to issue waivers regardless of whether contractors made good faith efforts to meet a DBE Goal (No Waiver Policy). On January 6, 2010, the Department's District 8 EEO officer announced at an informational meeting for general contractors that the Department would no longer grant waivers with respect to DBE contract goals. Amended Motion for Temporary Restraining Order (d/e 8), Exhibit A, Declaration of Gary Prough, ¶ 9. The Secretary personally told Dunnet Bay's President Tod Faerber that he was under pressure not to give out waivers. The Secretary further told Faerber that the Illinois Director of Diversity Enhancement called the Secretary every day to tell him not to give out any waivers. Verified Complaint, ¶ 46. Dunnet Bay argues that the No Waiver Policy effectively turned the DBE Goal into a

4

rigid quota.

The Department held a reconsideration hearing before the Department's Chief of Staff Bill Grunloh. The Department denied reconsideration. Response to Plaintiff's Amended Motion for Temporary Restraining Order (d/e 11), attached Affidavit of Bill Grunloh (Grunloh Affidavit), ¶ 6. Dunnet Bay alleges that the Department denied reconsideration because of the No Waiver Policy. Grunloh states that he denied reconsideration because Dunnet Bay did not use all reasonable and available means to solicit DBEs. Grunloh Affidavit, ¶ 8.

Dunnet Bay's representative at the reconsideration hearing also complained that Dunnet Bay was left off the List of Bidders issued by the Department. Grunloh decided that the omission of Dunnet Bay from the List of Bidders tainted the process. The Department decided to re-let the bid to correct the omission of Dunnet Bay from the List of Bidders. Grunloh Affidavit, ¶¶11-13. The Department could still cancel the bid process at this stage of the process. 30 ILCS 500/20-40. The Department was also motivated to re-let the Project because all of the bids exceeded the Department's cost estimate. Reed Affidavit, ¶15.

The Department issued a new invitation for bids for the Project and

5

included Dunnet Bay on the List of Bidders. The Department also modified the bid specifications for the Project in order to lower costs. Reed Affidavit, ¶¶ 16-17. The DBE Goal remained 22 percent, however. Id., ¶ 18. Dunnet Bay submitted a revised bid in the sum of $10,199,793.45. Id., ¶ 20. This time, Dunnet Bay exceeded the DBE Goal; Dunnet Bay had 23.18 percent DBE participation in its bid. Id., ¶ 20. This time, however, Dunnet Bay was the third lowest bidder. The lowest bidder was Albin Carlson & Co., with a bid of $9,637,998.74. Id., ¶ 19. The Albin Carlson & Co. bid had a DBE participation rate of 22.7 percent. Id., ¶ 19. The Department plans to enter into Contract No. 60157 for the Project with Albin Carlson & Co. on April 5, 2010.

## ANALYSIS

Dunnet Bay asks the Court to restrain the Defendant Secretary from entering into Contract No. 60157 for the Project with the new low bidder Albin Carlson & Co. Dunnet Bay argues that the arbitrary DBE Goal set for the Project and the No Waiver Policy imposed an unconstitutional racial preference into the bid process in violation of Dunnet Bay's right to equal protection. The Secretary argues that Dunnet Bay lacks standing, that the Eleventh Amendment bars injunctive relief, and that Dunnet Bay has not

established a right to a TRO. The Court will address the standing and Eleventh Amendment issues first, and then the elements of the TRO.

Dunnet Bay alleges a sufficient violation of its rights to establish standing. The elements of standing are: (1) an invasion of a legally protected interest that is concrete and particularized; (2) a causal connection between the injury and the conduct of which the plaintiff complains; and (3) a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). In the context of government contracting, Dunnet Bay "need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Fla., 508 U.S. 656, 666 (1993). Dunnet Bay alleges that the Defendant set arbitrary goals for DBE participation and applied an unwritten No Waiver Policy that interfered with Dunnet Bay's ability to compete for government contracts. Dunnet Bay has established standing under Northeastern Florida.

The Defendant also argues that the Eleventh Amendment bars this action. The Court agrees that the Eleventh Amendment limits the available

remedies, but does not agree that the action is totally barred. Dunnet Bay has brought this action against the Defendant Secretary in his official capacity as Illinois Secretary of Transportation. Dunnet Bay seeks a TRO because the Secretary's actions allegedly violate its right to equal protection under the Fourteenth Amendment. The Eleventh Amendment limits the available remedies in such an action to prospective injunctive relief. <u>Green v. Mansour</u>, 474 U.S. 64, 68 (1985).

In this context, if Dunnet Bay can prove that the Department is operating an unconstitutional bid process by setting the DBE Goal arbitrarily high and by using a No Waiver Policy, it is conceivable that the Court could grant prospective injunctive relief by enjoining the Secretary from proceeding with the Project unless the Secretary started over with a new, constitutional bid process. The Secretary could either cancel the Project or conduct a constitutional bid process. Such relief would be prospective only. The Court could also prospectively enjoin the Secretary from using illegal policies in the future. Because these remedies remain a possibility, the Court does not believe that the Eleventh Amendment bars Dunnet Bay's action or its request for a TRO. The Court will, therefore, address Dunnet Bay's request for a TRO.

8

To secure a TRO or other preliminary injunctive relief, Dunnet Bay must show: (1) a likelihood of prevailing on the merits, (2) an inadequate remedy at law, (3) irreparable harm if the preliminary relief is denied, and (4) the balance of the equities weigh in favor of issuing the TRO. <u>Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S. of America, Inc.</u>, 549 F.3d 1079, 1086 (7th Cir. 2008); <u>Grossbaum v. Indianapolis-Marion County Bldg. Authority</u>, 63 F.3d 581, 585 (7th Cir. 1995).

Dunnet Bay has shown some likelihood of success on the merits. Dunnet Bay has presented evidence that the Department has instituted a No Waiver Policy. Dunnet Bay has presented evidence that the Department's District 8 EEO Officer announced at an informational meeting in January 2010 that no waivers would be issued. Dunnet Bay's President Tod Faerber has also averred in the Verified Complaint that the Defendant Secretary personally admitted that he was under pressure not to allow any waivers of the DBE requirement. The Defendant Secretary does not deny making the statement to Faerber. This evidence, therefore, provides some indication that the unwritten No Waiver Policy exists. If so, then the DBE Goal may not be a goal, but a mandatory requirement that all bidders must meet to qualify for federally funded projects. In that event,

the Department's bid process may exceed the authority granted by applicable federal regulations and may violate Dunnet Bay's right to equal protection. City of Richmond v. J.A. Croson Co., 488 U.S. 469, 499-500 (1989); Northern Contracting, Inc., 473 F.3d at 722.

Dunnet Bay, however, has not shown a likelihood of proving that the DBE Goal was set arbitrarily. Dunnet Bay presents no competent evidence on this point.[1] The Defendant Secretary presents the Affidavit of Christine Reed, Director and Chief Engineer of the Department's Division of Highways. Reed states in summary fashion that the process previously approved by the Court of Appeals in Northern Contracting Inc. was used to set the DBE Goal for the Project. Dunnet Bay complains that this conclusory Affidavit is not persuasive. The Reed Affidavit is conclusory on this point, but Dunnet Bay has the burden of proof, not the Defendant Secretary. Dunnet Bay failed to meet its burden on this point.

---

[1]Dunnet Bay presents a newspaper article containing an interview of Diversity Director Harris. Verified Complaint, Exhibit D. The article is not authenticated and the statements in the article are hearsay within hearsay. See Fed. R. Evid. 802, 805. Dunnet Bay argues that hearsay is admissible for preliminary relief. The controlling authority cited only states that affidavits may be used in lieu of live testimony at a hearing on a preliminary injunction. Goodman v. Illinois Dept. of Financial and Professional Regulation, 430 F.3d 432, 439 (7th Cir. 2005). The affidavit still must be based on personal knowledge. Dunnet Bay needed an affidavit from the author of the article to establish that the article was accurate. The article, as submitted, is not competent evidence.

Dunnet Bay also has not shown that it lacks an adequate remedy at law. Dunnet Bay has alleged a claim against the Secretary, in his official capacity, for violation of Title VI of the Civil Rights Act of 1964. Verified Complaint, Count IV; 42 U.S.C. § 2000d. Illinois waived its Eleventh Amendment immunity for claims based on Title VI violations by accepting federal funds for the Project. 42 U.S.C. § 2000d-7; Cherry v. University of Wisconsin System Bd. of Regents, 265 F.3d 541, 554-55 (7th Cir. 2001). If Dunnet Bay can prevail on this claim, it may be able to recover damages from the Department for the alleged injury. See Alexander v. Sandoval, 532 U.S. 275, 279-80 (2001). If so, Dunnet Bay has an adequate remedy at law.

Dunnet Bay also may be able to amend the Verified Complaint to add a claim for damages against Secretary Hannig in his individual capacity. According to the Verified Complaint, Secretary Hannig was personally involved in the alleged institution of the No Waiver Policy. If so, the Eleventh Amendment would not shield him from personal liability. Hafer v. Melo, 502 U.S. 21, 27 (1991). Dunnet Bay, therefore, appears to have an adequate remedy at law. Because Dunnet Bay can recover damages, it has also failed to show that it will suffer irreparable harm from the alleged

11

wrongful conduct.

Finally, the balance of the equities weighs against entering a TRO. The available equitable remedy would impose significant costs on the Department and the public without providing a clear remedy to Dunnet Bay. Dunnet Bay's main complaint is that the first bid process violated its right to equal protection, and that, but for the illegal policies, it would have been awarded Contract No. 60157 for the Project. Verified Complaint, ¶¶ 48-50. The Court, however, cannot enjoin the Secretary to award the Project to Dunnet Bay. The Secretary already canceled the first bid process, changed the specifications for the Project, and started a second bid process in which Dunnet Bay participated. An injunction that required the Secretary to go back to the old specifications for the Project and the first bid process would constitute retrospective relief. The Court cannot award retrospective relief against the Secretary in his official capacity for a violation of equal protection. Green, 474 U.S. at 68-69.

The Court can enjoin the Secretary from proceeding with the current allegedly illegal bid process, but such an injunction would not give Dunnet Bay the remedy it seeks. Such an injunction would leave the Secretary with two options: cancel the Project or start over with a new bid process. Neither

of these options would clearly award the Project to Dunnet Bay.  Dunnet Bay met the DBE Goal in the second bid process, but lost the bid.  Dunnet Bay does not allege that the allegedly illegal policies affected the amount of its bid the second time; yet it lost.  Dunnet Bay presents no evidence that a third bid, without the illegal policies, would change this outcome.  Thus, it is unclear that Dunnet Bay would receive a significant benefit from the available injunctive relief.  The TRO, however, would delay the repairs to the Eisenhower Expressway and, thereby, interfere with the interests of thousands of Illinois citizens in the Chicago metropolitan area.  In light of the unclear benefit to Dunnet Bay and the harm to the public  if a TRO were to issue, the Court finds that the equities weigh strongly against injunctive relief.  Dunnet Bay may still vindicate its rights by pursuing its Title VI claim or by suing the Secretary and others in their individual capacities to recover damages.  Dunnet Bay, however, has not demonstrated that a TRO is warranted.

     THEREFORE, Plaintiff Dunnet Bay Construction Company's Amended Motion for a Temporary Restraining Order (d/e 8) is DENIED.  Plaintiff's original Motion for Temporary Restraining Order (d/e 3) is DENIED as moot, due to the filing of the Amended Motion.

IT IS THEREFORE SO ORDERED.

ENTER:  March 25, 2010

    FOR THE COURT:

                          s/ Jeanne E. Scott
                          JEANNE E. SCOTT
               UNITED STATES DISTRICT JUDGE